**Betty Jane Alexander BIRDWELL,
Appellant,**

v.

**Allen Ray BIRDWELL, Appellee.**

No. 2-91-008-CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 6, 1991.
Rehearing Denied Dec. 13, 1991.

Smith & Douglass, and Gene Douglass, Wichita Falls, for appellant.

The Montgomery Law Firm, P.C., and Elton M. Montgomery, Graham, for appellee.

Before WEAVER, C.J., and MEYERS and DAY, JJ.

## OPINION

DAY, Justice.

This is an appeal from the grant of a summary judgment in favor of appellee, Allen Ray Birdwell.

We reverse and remand only as to the reasonable and necessary college expenses provision, and we reverse and render as to all other issues.

On January 6, 1986, Betty Jane Alexander Birdwell (hereafter Betty) and Allen Ray Birdwell (hereafter Allen) signed an "Agreement Incident to Divorce." The Agreement provided in pertinent part:

> WHEREAS, there is now pending ... a divorce ... in which cause the Petitioner [Allen] seeks a divorce from Respondent [Betty]; and
>
> ....
>
> WHEREAS, ... the parties have now agreed to a partition and division of their property, alimony payments and to a child support arrangement, and they desire to reduce such agreement to writing:
>
> NOW, THEREFORE, we, ALLEN ... and BETTY ... in consideration of the premises, do hereby agree as follows:
>
> ....
>
> ALLEN ... shall pay unto the said BETTY ... the sum of Two Thousand dollars ($2,000) each month for a period of ten (10) years....

This same Agreement also divided the community estate, provided for custody arrangements, child support, and payment of college expenses of the children. The Agreement was approved by the divorce court, and was incorporated by reference into the final decree of divorce. Allen made alimony payments under this judgment until April of 1990.[1] Allen failed to make the $2,000 payment for May.

1. In August of 1988, the parties wrote a joint letter to the court which entered the divorce, stating that as one of the children had moved in with Allen, the parties agreed that no child support would be paid one to the other as to that child. *However, the letter also reaffirmed*

Betty filed the instant suit on June 27, 1990. She sought payment of the alimony due, and, as the youngest child had entered college, payment of the college expenses of that child, and for attorney's fees. Allen defended his ex-wife's action by pleading (1) that the $2,000 alimony was in reality child support, and was "only denominated contractual alimony in order to accomplish the parties' tax objectives"; (2) it was a judgment ordering alimony and was thus void against the public policy of the State of Texas; and (3) that under the doctrine of *Francis v. Francis*, 412 S.W.2d 29 (Tex. 1967), the Agreement had only the force which it would have as a regular contract, and as there was no consideration or legally insufficient consideration to support the alimony portion, that part of the Agreement was void.

Betty moved for summary judgment on the contractual alimony provision, reserving for trial on the merits the suit for breach of the college expense provision. Allen also moved for summary judgment, on the grounds stated above. He also sought the affirmative relief of being excused from making all future payments.

The trial court denied Betty's motion, and granted Allen's motion on the grounds alleged, and on a ground not presented by Allen for summary disposition—i.e., the college expense provision and the issue of attorney's fees.[2] At the hearing on Betty's motion for new trial, the court entered an award of attorney's fees. In a subsequent order, the court also purported to sever Betty's action for college expenses, and to consolidate it with the divorce action, which had previously been filed and granted in another county.

In a summary judgment case, the issue on appeal is whether the movant met his burden for obtaining summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against the movant. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *Id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins. Co.*, 480 S.W.2d 176, 178 (Tex. 1972). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any existing doubts must be resolved in the non-movant's favor. *Montgomery*, 669 S.W.2d at 311. The summary judgment will be affirmed only if the record on appeal establishes that the movant has conclusively proved all essential elements of the cause of action or defense as a matter of law. *Clear Creek Basin Auth.*, 589 S.W.2d at 678.

### I. Impermissible Alimony and the "no consideration" Issues

In her first and second points of error, Betty complains that it was error to grant Allen a final summary judgment on the ground that the contractual alimony was void in Texas, and that the contract was void for lack of consideration. She also alleges that as these defenses were not available to Allen, the trial court erred by not granting her motion for summary judgment. As this is the crux of the case, we will address these first.

Allen's position, plainly put, is that under the authority of *Francis v. Francis*, 412

---

Allen's commitment to continue to pay the $2,000 alimony as originally agreed through December 1995. The parties never sought to judicially modify the divorce, nor was an appeal taken from its entry.

2. The trial judge awarded attorney's fees in the amount of $6,000 to whichever party should prevail on appeal, despite the fact that neither party prayed for such fees in their summary judgment motions, and neither party presented evidence as to amount or reasonableness of a $6,000 award.

S.W.2d 29 (Tex.1967), and *McBride v. McBride,* 256 S.W.2d 250 (Tex.Civ.App.—Austin 1953, no writ), a contract for alimony which is approved by a court and incorporated into a divorce decree, must stand alone from that judgment and is only enforceable to the degree that contract law recognizes the agreement as a valid contract. Allen claims he only suggested the alimony provision out of a sense of "moral obligation," and, under contract principles, that obligation is legally insufficient consideration to support the agreement. We reject this contention for several reasons.

The Supreme Court in *Francis* held that a judgment which recited that parties had arrived at a community property settlement (including provisions for periodic support of the ex-wife) and that the court ordered approved, did not purport to order the husband to pay alimony contrary to the public policy of Texas. The court's holding centered on the definition of "alimony." The court held that to be forbidden "alimony," the support must have been ordered by a judgment or decree of a court. A mere contractual obligation of a husband[3] to make future periodic or lump sum payments for the support and maintenance, said the court, is excluded from the definition of alimony. The court buttressed this holding upon rulings from jurisdictions which recognize alimony. In those states, "alimony" is different from a "contractual obligation for periodic support." *Francis,* 412 S.W.2d at 32. Ultimately, the court concluded that:

> [A]limony which contravenes the public policy of the State is only those payments imposed by a court order or decree on the husband as a personal obligation for support and sustenance of the wife after a final decree of divorce.
>
> From what has been said, it follows that obligations assumed by the husband in separation agreements or contracts to make payments for the support of the wife after a divorce decree becomes final, are not obligations to pay alimony

and do not violate the public policy of this State.

> . . . .

> And if as a part of their settlement the parties agree that the husband will make support payments to the wife after a divorce is granted, approval of the agreement by the court should not be held to invalidate it as alimony. Amicable settlement by the parties of their property rights should be encouraged, not discouraged. The agreement will then have whatever legal force the law of contracts will give to it.

*Francis,* 412 S.W.2d at 33.

Allen is mounting a collateral attack on a judgment that he (and his present counsel) drafted, signed, and agreed to. This he may not do. Other courts that have considered similar fact situations have never reached the merits of the contractual defenses, as they have held that when a judgment becomes final, and is not appealed, the complaining party has lost his chance to attack that judgment, and such defenses will not later be heard. Allen approaches this matter as a purely contractual obligation. He overlooks the fact that this "Agreement Incident to Divorce" was approved by the court and, as such, became a valid and binding judgment of the court. This Agreement is no longer merely a contract between Betty and Allen, but, upon approval, became the judgment of the court. *Chess v. Chess,* 627 S.W.2d 513, 515 (Tex.App.—Corpus Christi 1982, no writ). A judgment rendered by consent has the same force as a judgment entered after protracted litigation *except to the extent that the consent excuses error and operates to end all controversy between the parties. Wagner v. Warnasch,* 156 Tex. 334, 295 S.W.2d 890, 892 (1956) (emphasis added). *See also McCray v. McCray,* 584 S.W.2d 279 (Tex.1979). In *Ex parte Gorena,* 595 S.W.2d 841, 844 (Tex.1979), the supreme court again reinforced this precept: "Thus, in suits to enforce agreed judgments, parties may not raise contractu-

---

**3.** While the court in *Francis* referred only to an obligation by a *husband* to support a *wife,* the commonly accepted understanding of this obli-

gation is that it can run in either direction—from husband to wife or from wife to husband.

al defenses because such defenses constitute impermissible collateral attacks on the prior judgments." *Accord Pettitt v. Pettitt,* 704 S.W.2d 921 (Tex.App.—Houston [14th Dist.] 1986 writ ref'd n.r.e.); *Conner v. Bean,* 630 S.W.2d 697 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Atkinson v. Atkinson,* 560 S.W.2d 200 (Tex. Civ.App.—Amarillo 1977, no writ); *Peddicord v. Peddicord,* 522 S.W.2d 266 (Tex. Civ.App.—Beaumont 1975, writ ref'd n.r.e.).

Allen urges that the language "[t]he agreement will then have whatever legal force the law of contracts will give to it," *Francis,* 412 S.W.2d at 33, supports his contention that there must be a *quid pro quo* in order to make the exchange contractually valid. There is ample case law in Texas dismissing this contention, but the case that most closely resembles this one is *Miller v. Miller,* 463 S.W.2d 477 (Tex.Civ. App.—Tyler 1971, writ ref'd n.r.e.). In that case, a wife brought suit to collect unpaid payments due under a written property settlement which was approved by the court. Defendant pled that the agreement was supported by either no consideration or inadequate consideration. The agreement contained language specifically to come within the federal provisions to make the payments deductible by the husband. Such language, albeit in different words, exists in the agreement between the Birdwells. The husband contended in *Miller,* just as Allen contends here, that the language constituted a provision for permanent alimony and was void and against the public policy of the State of Texas. The court in *Miller* determined that the obligation of the husband to make support payments to the wife after the divorce decree became final are not obligations to pay alimony and do not violate the public policy of Texas. The judgment was held valid and enforceable. *Id.* at 478. The record in *Miller* showed that the Agreement listed all the community property of husband and wife and divided the same. The record in this case shows that the agreement lists all the community property of Betty and Allen and divided the same. The court in *Miller* held that the payments must refer to property owned or claimed by either party to be enforceable. *Id.* at 480. The husband in that case testified that the provisions for alimony were because he felt that the wife would have a hard time adjusting, and the alimony was to assist her in adjusting. This is the same situation as in the present case. Allen testified that he felt that he had a "moral obligation" to support Betty. This provision is part of the entire contract, and as such, is not invalid as alimony, nor is invalid for lack or failure of consideration. We hold that the Agreement Incident to Divorce was not impermissible court-ordered alimony.

## II. Lack of Consideration Issue

Assuming, *arguendo,* that consideration must be found to support the Agreement, we hold that such consideration is clear from the face of the Agreement. In *Mahrer v. Mahrer,* 510 S.W.2d 402 (Tex.Civ. App.—Dallas 1974, no writ), the court held that an alimony agreement was supported by adequate consideration. The consideration, said the court, came from the wife's acquiescence in husband's proposed division of the community property. *Mahrer,* 510 S.W.2d at 404, *citing Lampkin v. Lampkin,* 480 S.W.2d 35, 37 (Tex.Civ. App.—El Paso 1972, no writ). The settlement agreement between the Birdwells reflects that Allen received the vast majority of the property, and all of the income-producing property. It is not our responsibility to determine the fairness of the division. However, on the face of the documents, Betty gave up whatever right she had to challenge the property division sought by Allen, and she lost her chance to petition the divorce court for a more equitable distribution. Upon a challenge to the adequacy of consideration, a court will generally not look beyond the face of the contract unless there is unconscionability, bad faith, or fraud, in which case, in the interest of equity, a court may consider the adequacy of consideration. *Neeley v. Intercity Management Corp.,* 623 S.W.2d 942, 944 (Tex.App.—Houston [1st Dist.] 1981, no writ). In order for the consideration to be deemed inadequate, it must be so

grossly inadequate as to shock the conscience, being tantamount to fraud. *Cearley v. Cearley*, 331 S.W.2d 510, 512 (Tex. Civ.App.—Dallas 1960, no writ). Furthermore, it is axiomatic that the relinquishment of a legal right (i.e., a detriment to the promisee) is sufficient consideration to support a contract. *Shell Pipeline Corp. v. Coastal States Trading, Inc.*, 788 S.W.2d 837, 840 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Tripp Village Joint Venture v. MBank Lincoln Centre*, 774 S.W.2d 746, 749 (Tex.App.—Dallas 1989, writ denied).

 Allen urges that in all of the authority which deals with similar agreements, none specifically state that the alimony is "unrelated to the division of the community estate." However, this language does not take the entire contract out of the purview of precedent in this state. In *Mahrer*, the agreement provided that the alimony was part of the consideration for the entire property settlement agreement. *Mahrer*, 510 S.W.2d at 403. The same idea is expressed in the opening paragraphs of the Birdwell Agreement.[4] Although the alimony provision states that it is unrelated to the division of the community estate, it does NOT state that it is wholly gratuitous. A single consideration is sufficient to support multiple promises bargained for in an agreement. *Reeves v. Lago Vista, Inc.*, 497 S.W.2d 950, 954 (Tex. Civ.App.—Austin 1973, writ ref'd n.r.e.).

There are other, equally compelling reasons to hold this agreement is valid. If taxpayers in Texas were forbidden, by the policy of the state, to enter into voluntary, contractual alimony as part of a divorce settlement, they would be denied the benefits of the provisions of the Internal Revenue Code § 71(a). If parties choose to draft a divorce settlement to fit the terms of the federal deduction, the agreement could be voided by the payor at any time as "void against public policy." In order to make an "alimony" agreement that is valid

in Texas, Allen urges, it must be tied to child support or property settlement, thus taking it out of the purview of the federal statute. Merely because an agreement is in accord with I.R.C. § 71(a) should not serve to make that agreement unenforceable. This would indeed be a Hobson's choice.[5] If either of these options were the law of this state, then truly the "ability of parties to reach amicable settlements" would be impaired. *Francis*, 412 S.W.2d at 33. *See also Stubbe v. Stubbe*, 733 S.W.2d 132, 133 (Tex.1987).

We find that the consideration supporting the Agreement was wholly adequate. Thus, it was error for the trial court to grant Allen Birdwell summary judgment on either of his asserted defenses. Betty's second point of error is sustained.

### III. Parol Evidence

In her first point of error, Betty posits that it was error for the trial court to deny her motion for summary judgment. We agree.

 Even given our disposition that granting summary judgment to Allen was error, Betty is entitled to summary judgment only if no material issues of fact remain and she is entitled to judgment as a matter of law. *Clear Creek Basin Auth.*, 589 S.W.2d at 678. Allen claims that a fact issue exists as to whether or not the "alimony" was, in fact, child support. He stated in his affidavit in support of his motion for summary judgment that the money designated as "alimony" was in fact child support. This contention is disingenuous at best.

First, it is late in the game for Allen to make this assertion. As recently as August of 1988, in a joint letter to the divorce court, he asserted his belief that he was obligated to make the alimony payments in addition to and separate from the child support payments. It is a prevarication to

---

4. The parties have now agreed to a partition and division of their property, alimony payments and to a child support arrangement ... in consideration of the premises ... do hereby agree as follows....

5. An apparent freedom of choice when there is no real alternative.

assert on appeal that "Allen does contend and has contended from the very beginning that the divorce decree is void and of no force and effect to the extent that it purports to order Allen to pay contractual alimony to Betty." Are we to assume that this Agreement was entered into by Allen with fraudulent intent? If he always was of the mind that the Agreement was void, why did he pay on the obligation for almost two and one-half years? In any event, Allen is equitably estopped from making this assertion.

■ Secondly, in order to prove that the "alimony" was in fact child support would require the introduction of parol evidence to contradict the plain terms of the Agreement. This is impermissible. "[I]f after applying established rules of interpretation, a written instrument remains reasonably susceptible to more than one meaning, extraneous evidence is admissible to determine the true meaning of the instrument, and summary judgment based on such a record is improper." *R & P Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 519 (Tex.1980). Extrinsic evidence of parties' intentions does not become admissible to interpret an unambiguous contract merely because declaratory relief has been requested. *Ferguson v. DRG/Colony North, Ltd.*, 764 S.W.2d 874, 875 (Tex. App.—Austin 1989, writ denied). The contract facially shows that the parties knew how to designate funds for the support of the children. If the funds at issue were so intended, they would have been included in the paragraph dealing with child support. Further, the actions of the parties in paying these monies separate and apart from the payment of child support belie this contention.

As there was no fact issue as to the interpretation of the contract, and Betty showed that she was entitled to judgment as a matter of law, it was error to deny her motion for summary judgment. Betty's first point of error is sustained.

## IV. Grant of Attorney's Fees

The remaining issues deal with the grant of attorney's fees and the severance of the college expenses issue. We will address them separately.

At the hearing on the motion for new trial, Allen's attorney suggested to the court that the fees should be granted to whichever party should prevail on appeal. The court further determined that:

> [A] reasonable attorney's fee for the party ultimately prevailing in this case would be the sum of $6,000 through trial court, an additional $2,500 to include additional services in connection with any appeal to the Court of Appeals in Fort Worth, together with an additional $1,500 fee if an application for writ of error is filed and further proceedings are had in the Supreme Court of Texas.

There was no evidence to support a fixed dollar amount of fees.

■ Allen urges that in his closing paragraph, he prayed that he "recover all costs, together with such other and further relief to which he may be justly entitled." However, a summary judgment cannot be sustained on a ground not specifically set forth in the motion. *Rutherford v. Whataburger, Inc.*, 601 S.W.2d 441, 443 (Tex.Civ. App.—Dallas 1980, writ ref'd n.r.e.). Such language, incorporated into virtually every pleading in the state, is insufficient to raise the issue of attorney's fees for summary judgment purposes. The relief sought, namely, an award of attorney's fees, is different and in addition to a prayer for general relief. *See, e.g., Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 838–39 (Tex.App.— Eastland 1984, no writ). Moreover, an examination of the pleadings has shown that, in fact, neither party pled attorney's fees in their summary judgment motions. Thus neither party is entitled to them, and this grant of attorney's fees was error. We sustain Betty's third point of error.

## V. Severance of the College Expense Action

Finally, Betty urges that it was error for the trial court to sever the college expense issue and consolidate it into the original divorce action. We agree.

Once a child reaches the age of 18, the divorce court no longer "retains jurisdiction over the subject matter and consequently would have no power to enter orders for support ... after the [child] had reached the age of 18 years." *McCullough v. McCullough*, 483 S.W.2d 869, 870 (Tex. Civ.App.—Tyler 1972, no writ). Thus, the divorce court in Jack County was without jurisdiction to hear the suit on the college expenses, and the Young County court was the proper court for their determination.

In summary, we hold that:

(1) Allen cannot interpose contract defenses to defeat the contractual alimony;

(2) Contractual alimony is not void against the public policy of this state;

(3) Parol evidence is inadmissible to vary the unambiguous terms of the contract;

(4) As neither party affirmatively pled attorney's fees in their respective motions for summary judgment, neither party was entitled to an award of the same, and;

(5) The Young County court was the proper court to hear the determination of the reasonable college expense issue.

The judgment of the trial court is reversed, and the cause is remanded only on the issue of the reasonable and necessary college expenses. Otherwise, the judgment is reversed, and judgment is rendered in favor of Betty Jane Alexander Birdwell in the amount pled in her summary judgment motion, $8,000.

Reversed and remanded in part, and reversed and rendered in part.