# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00479-CV

**Fred Hindman, Appellant**

**v.**

**Anita Gayle Harding, as Independent Executrix of the
Estate of Donald Glen Harding, Appellee**

## FROM COUNTY COURT AT LAW NO. 2 OF TOM GREEN COUNTY
### NO. 03-C-207-L2, HONORABLE PENNY ANNE ROBERTS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant, Fred Hindman, appeals from a partial summary judgment granting declaratory judgment and attorney's fees for appellee, Anita Gayle Harding (Mrs. Harding), in her capacity as independent executrix of the estate of her husband, Donald Glen Harding (Mr. Harding). Both parties claim ownership of a collection of guns that was in the possession of Mr. Harding at the time of his death. The trial court granted partial summary judgment on Mrs. Harding's declaratory judgment claim based on a finding that the consideration paid by Hindman was grossly inadequate and invalid as a matter of law. Because we hold that summary judgment regarding the adequacy of the consideration was inappropriate, we reverse and remand.

**BACKGROUND**

Mr. and Mrs. Harding owned Bell Plumbing until Mr. Harding's death in April 2003. Hindman was an employee of Bell Plumbing for approximately nineteen years. Both he and Mr. Harding collected guns and shot them competitively for more than ten years prior to Mr. Harding's death. Mrs. Harding testified at a temporary injunction hearing that her husband owned approximately forty-five guns, which remained in a gun safe at Bell Plumbing until his death.

Shortly after Mr. Harding's death, Hindman took possession of the guns and presented Mrs. Harding with a bill of sale, which was dated three years before Mr. Harding's death. The bill of sale was signed by both men and indicated that Mr. Harding agreed to sell all of his guns to Hindman "for a sum agreed to by the two of [them]." Hindman testified that the purpose of the bill of sale was to prevent the Hardings' son from obtaining the guns and to protect Mrs. Harding in case her son became angry upon not receiving the guns.

Hindman estimated that the gun collection was worth between $3,000 and $7,000. He stated that he paid for Mr. Harding's lunch and gave him a $5 bill (for a total of $12.95) in exchange for the guns. Hindman testified that Mr. Harding wanted to sell some of his guns the week before his death. Mr. Harding arranged for Hindman to sell the guns at a shooting competition. Hindman ultimately tried to sell only one gun and was not able to sell it, but he testified that he would have given the proceeds to Mr. Harding. He also testified that he would not have tried to stop Mr. Harding if he had attempted to sell or trade any of the guns referred to on the bill of sale. He testified that Mr. Harding was "the closest thing to a father [he] had."

2

Three witnesses who were friends of Mr. Harding and Hindman testified that Mr. Harding told them about the bill of sale before he died. The first witness, Wanda Young, testified that Mr. Harding told her that he had not been feeling well and that he was concerned about his collection of guns. Young testified that Mr. Harding stated that he did not want his son to obtain the guns because he was afraid his son would sell them. Young testified that Mr. Harding informed her of the bill of sale, stating that the only way he knew the guns would be safe was to sell them to Hindman. The second witness, Ken Kuntz, testified that Mr. Harding expressed the same concerns and stated that his guns were to go to Hindman. The third witness, Alex Wakal, testified that Mr. Harding stated, "If anything happens to me, there's a bill of sale in my range bag for [Hindman] for all of my guns."

Hindman also testified that Mr. Harding led him to believe that he would take over Bell Plumbing when Mr. Harding died and receive a company truck Hindman had been driving. He testified that he was not aware until Mr. Harding's death that Mr. Harding arranged for the business to be transferred to Harding's father-in-law. Hindman testified that it bothered him that he was not given an opportunity to purchase the business.

During the weeks after Mr. Harding's death, Mrs. Harding and Hindman could not reach an agreement as to ownership of the guns. Hindman testified that at one point, he offered to give Mrs. Harding the guns in exchange for title to the company truck or ownership of Bell Plumbing. Mrs. Harding refused and eventually filed suit against Hindman on behalf of her husband's estate. She requested a temporary restraining order and temporary and permanent injunctions to prevent the sale of any of the guns and asked the court to order Hindman to return the

3

guns to the estate. After a hearing, the trial court granted a temporary injunction. Mrs. Harding then moved for partial summary judgment on her declaratory judgment claim. The trial court granted the motion and awarded attorney's fees, finding that the consideration paid by Hindman was grossly inadequate and invalid as a matter of law. The court also issued a declaration that the guns belonged to Mr. Harding's estate.[1]

## STANDARD OF REVIEW

A partial summary judgment is appealable after a judgment is rendered disposing of all issues in the case. *Newco Drilling Co. v. Weyand*, 960 S.W.2d 654, 656 (Tex. 1998). Because the propriety of summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.) The issue on appeal is whether the movant met its summary-judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Thus, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant and accept the evidence favorable to the nonmovant as true. *Id.*; *Harwell v. State Farm*

---

[1] Mrs. Harding non-suited her remaining claims.

4

*Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47. The party moving for summary judgment must conclusively prove all essential elements of its claim. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

## DISCUSSION

Hindman appeals the trial court's judgment in three issues. He argues that the trial court erred in (1) considering a transcript of a prior injunction hearing as summary-judgment evidence, (2) finding that the consideration paid by Hindman was grossly inadequate as a matter of law, and (3) granting attorney's fees to Mrs. Harding. We will address each issue in turn.

### Summary-Judgment Evidence

Hindman argues that the trial court erred in relying on a transcript of the prior injunction hearing as summary-judgment evidence. However, Hindman failed to object to the use of the hearing transcript as summary-judgment evidence in the trial court. To preserve error for appellate review, a party must make a timely objection stating the specific grounds for the ruling it seeks from the trial court and must obtain a ruling on the objection. Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 166a(f); *see also Williams v. Conroe Indep. Sch. Dist.*, 809 S.W.2d 954, 957 (Tex. App.—Beaumont 1991, no writ) (appellant's failure to object to propriety of summary judgment evidence in trial court waived error on appeal); *Grainger v. Western Cas. Life Ins. Co.*, 930 S.W.2d 609, 613-14 (Tex. App.—Houston [1st Dist.] 1996, writ denied). The record shows that Hindman not only failed to object to the court's consideration of the transcript but also requested that the court

5

read the entire transcript before making a ruling. Because Hindman failed to object and obtain a ruling regarding the use of the hearing transcript, Hindman waived his right to raise this issue on appeal.

Even if Hindman had preserved error, his argument would fail because the trial court properly considered the evidence. Hindman specifically contends that the hearing transcript was not proper evidence under either subsections (c) or (d) of Rule 166a of the Texas Rules of Civil Procedure. Rule 166a(c) addresses the propriety of evidence on file with the court prior to the summary-judgment hearing, and 166a(d) addresses the use of summary-judgment evidence not on file. In this case, the transcript of the injunction was on file with the court more than a month before Mrs. Harding moved for partial summary judgment and more than two months before the summary-judgment hearing. Thus, Rule 166a(d) is not applicable to this case. Consequently, we must decide whether the hearing transcript is admissible under Rule 166a(c).

Rule 166a(c) lists several types of evidence a court may consider with a summary-judgment motion, including deposition transcripts, interrogatory answers, other discovery responses, pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records. The evidence at issue here is a transcript of the temporary injunction hearing, in which both parties presented witnesses and conducted direct and cross examinations. The transcript was certified by the court reporter and filed with the court long before Mrs. Harding moved for partial summary judgment. Mrs. Harding attached a copy of the transcript to the motion, and the motion clearly stated that the transcript was attached as evidence. Public records in courts' files are competent summary-judgment evidence. *Sparkman v. Kimmey*, 970 S.W.2d 654, 659 (Tex.

6

App.—Tyler 1998, pet. denied). A court also may take judicial notice of court records in a case involving the same subject matter and the same parties. *Id.*; *McCurry v. Aetna Cas. & Sur. Co.*, 742 S.W.2d 863, 867 (Tex. App.—Corpus Christi 1987, writ denied). Further, other courts have considered transcripts from prior court hearings in the same case as summary-judgment evidence. *See*, *e.g.*, *Sparkman*, 970 S.W.2d at 659; *Bexar Medina Atascosa Water Dist. v. Bexar Medina Atascosa Landowners' Ass'n*, 2 S.W.3d 459, 460-61 (Tex. App.—San Antonio 1999, pet. denied); *H.S.M. Acquisitions, Inc. v. West*, 917 S.W.2d 872, 879 (Tex. App.—Corpus Christi 1996, writ denied). If the issue had been preserved, we would find that the trial court properly considered the transcript as summary-judgment evidence because the hearing transcript in this case constitutes a certified public record under Rule 166a(c). We overrule this issue.

**Adequacy of Consideration**

Hindman also argues that the trial court erred in granting partial summary judgment based on grossly inadequate consideration. He contends that the evidence raises an issue of material fact regarding the adequacy of consideration. When a party challenges the adequacy of consideration supporting a contract, courts will not look beyond the face of the contract unless they find unconscionability, bad faith, or fraud. *Parker v. Dodge*, 98 S.W.3d 297, 301 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *City of Lubbock v. Phillips Petroleum Co.*, 41 S.W.3d 149, 161 (Tex. App.—Amarillo 2000, no pet.); *Martin v. Martin, Martin & Richards, Inc.*, 12 S.W.3d 120, 125 (Tex. App.—Fort Worth 1999, no pet.). For the consideration to be deemed inadequate, it must be so grossly inadequate that it shocks the conscience and is tantamount to fraud. *Phillips Petroleum*, 41 S.W.3d at 161; *Birdwell v. Birdwell*, 819 S.W.2d 223, 227-28 (Tex. App.—Fort Worth 1991, writ

7

denied); *Cearley v. Cearley*, 331 S.W.2d 510, 512 (Tex. Civ. App.—Dallas 1960, no writ). A detriment to the promisee is sufficient consideration to support a contract. *Martin*, 12 S.W.3d at 125; *Birdwell*, 819 S.W.2d at 228; *Tripp Village Joint Venture v. Mbank Lincoln Ctr., N.A.*, 774 S.W.2d 746, 749 (Tex. App.—Dallas 1989, writ denied); *Hovas v. O'Brien*, 654 S.W.2d 801, 803 (Tex. App.—Houston [14th Dist.] 1983, writ denied). An equal exchange is not required to create a valid consideration. *Hovas*, 654 S.W.2d at 803.

The trial court found that the consideration paid by Hindman was grossly inadequate, which rendered the bill of sale invalid as a matter of law. In reviewing the trial court's judgment, we first set forth the evidence in the light most favorable to Hindman. The evidence shows that Hindman worked for Mr. Harding for nineteen years, that they had been close friends for more than ten years, and that Hindman viewed Mr. Harding as a father figure. Mr. Harding typed the bill of sale and asked Hindman to sign it, stating, "If something happens to me, you'll need this." Mr. Harding informed Hindman that the purpose of the bill of sale was to prevent Harding's son from obtaining the guns, and he instructed Hindman to retrieve the guns immediately if anything happened to him. In presenting the bill of sale to Hindman, Mr. Harding did not indicate that Hindman was to return the guns to Mrs. Harding or to the Hardings' son after retrieving them. Hindman believed that he owned the guns, not that he was to hold them for Mrs. Harding or her son. Mr. Harding told three close friends, each on separate occasions, that he created a bill of sale to sell his gun collection to Hindman in order to preserve it.

We recognize the great monetary difference between consideration of $12.95 and a gun collection worth at least $3,000. We also recognize evidence of the close relationship between

the parties and Mr. Harding's expressed motivation for the exchange. In light of the circumstances set forth in the summary judgment record, we cannot find that the consideration "shocks the conscience" in a manner to make it inadequate as a matter of law. We accordingly hold that the trial court erred in granting partial summary judgment because the record does not support a finding of unconscionability, bad faith, or fraud as a matter of law.

**Attorney's Fees**

Because we reverse the partial summary judgment in this case, we must also reverse the award of attorney's fees at this time. Any ruling on attorney's fees must await the trial court's judgment on remand.

## CONCLUSION

We reverse the trial court's partial summary judgment and remand for further proceedings.

---

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Reversed and Remanded

Filed: May 5, 2005

9