TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-04-00479-CV






Fred Hindman, Appellant



v.



Anita Gayle Harding, as Independent Executrix of the

Estate of Donald Glen Harding, Appellee







FROM COUNTY COURT AT LAW NO. 2 OF TOM GREEN COUNTY

NO. 03-C-207-L2, HONORABLE PENNY ANNE ROBERTS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Appellant, Fred Hindman, appeals from a partial summary judgment granting
declaratory judgment and attorney's fees for appellee, Anita Gayle Harding (Mrs. Harding), in her
capacity as independent executrix of the estate of her husband, Donald Glen Harding (Mr. Harding). 
Both parties claim ownership of a collection of guns that was in the possession of Mr. Harding at
the time of his death. The trial court granted partial summary judgment on Mrs. Harding's
declaratory judgment claim based on a finding that the consideration paid by Hindman was grossly
inadequate and invalid as a matter of law. Because we hold that summary judgment regarding the
adequacy of the consideration was inappropriate, we reverse and remand. 


BACKGROUND Mr. and Mrs. Harding owned Bell Plumbing until Mr. Harding's death in April 2003. 
Hindman was an employee of Bell Plumbing for approximately nineteen years. Both he and Mr.
Harding collected guns and shot them competitively for more than ten years prior to Mr. Harding's
death. Mrs. Harding testified at a temporary injunction hearing that her husband owned
approximately forty-five guns, which remained in a gun safe at Bell Plumbing until his death.

 Shortly after Mr. Harding's death, Hindman took possession of the guns and
presented Mrs. Harding with a bill of sale, which was dated three years before Mr. Harding's death. 
The bill of sale was signed by both men and indicated that Mr. Harding agreed to sell all of his guns
to Hindman "for a sum agreed to by the two of [them]." Hindman testified that the purpose of the
bill of sale was to prevent the Hardings' son from obtaining the guns and to protect Mrs. Harding
in case her son became angry upon not receiving the guns. 

 Hindman estimated that the gun collection was worth between $3,000 and $7,000. 
He stated that he paid for Mr. Harding's lunch and gave him a $5 bill (for a total of $12.95) in
exchange for the guns. Hindman testified that Mr. Harding wanted to sell some of his guns the week
before his death. Mr. Harding arranged for Hindman to sell the guns at a shooting competition. 
Hindman ultimately tried to sell only one gun and was not able to sell it, but he testified that he
would have given the proceeds to Mr. Harding. He also testified that he would not have tried to stop
Mr. Harding if he had attempted to sell or trade any of the guns referred to on the bill of sale. He
testified that Mr. Harding was "the closest thing to a father [he] had."

 Three witnesses who were friends of Mr. Harding and Hindman testified that Mr.
Harding told them about the bill of sale before he died. The first witness, Wanda Young, testified
that Mr. Harding told her that he had not been feeling well and that he was concerned about his
collection of guns. Young testified that Mr. Harding stated that he did not want his son to obtain the
guns because he was afraid his son would sell them. Young testified that Mr. Harding informed her
of the bill of sale, stating that the only way he knew the guns would be safe was to sell them to
Hindman. The second witness, Ken Kuntz, testified that Mr. Harding expressed the same concerns
and stated that his guns were to go to Hindman. The third witness, Alex Wakal, testified that Mr.
Harding stated, "If anything happens to me, there's a bill of sale in my range bag for [Hindman] for
all of my guns."

 Hindman also testified that Mr. Harding led him to believe that he would take over
Bell Plumbing when Mr. Harding died and receive a company truck Hindman had been driving. He
testified that he was not aware until Mr. Harding's death that Mr. Harding arranged for the business
to be transferred to Harding's father-in-law. Hindman testified that it bothered him that he was not
given an opportunity to purchase the business. 

 During the weeks after Mr. Harding's death, Mrs. Harding and Hindman could not
reach an agreement as to ownership of the guns. Hindman testified that at one point, he offered to
give Mrs. Harding the guns in exchange for title to the company truck or ownership of Bell
Plumbing. Mrs. Harding refused and eventually filed suit against Hindman on behalf of her
husband's estate. She requested a temporary restraining order and temporary and permanent
injunctions to prevent the sale of any of the guns and asked the court to order Hindman to return the
guns to the estate. After a hearing, the trial court granted a temporary injunction. Mrs. Harding then
moved for partial summary judgment on her declaratory judgment claim. The trial court granted the
motion and awarded attorney's fees, finding that the consideration paid by Hindman was grossly
inadequate and invalid as a matter of law. The court also issued a declaration that the guns belonged
to Mr. Harding's estate. (1)


STANDARD OF REVIEW

 A partial summary judgment is appealable after a judgment is rendered disposing of
all issues in the case. Newco Drilling Co. v. Weyand, 960 S.W.2d 654, 656 (Tex. 1998). Because
the propriety of summary judgment is a question of law, we review the trial court's decision de novo. 
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Texas Dep't of Ins. v. American Home
Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.) The issue on appeal is
whether the movant met its summary-judgment burden by establishing that no genuine issue of
material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c); Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved against the movant. Great
Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). Thus,
we must view the evidence and its reasonable inferences in the light most favorable to the
nonmovant and accept the evidence favorable to the nonmovant as true. Id.; Harwell v. State Farm
Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995). Evidence that favors the movant's position
will not be considered unless it is uncontroverted. Great Am. Reserve Ins. Co., 391 S.W.2d at 47. 
The party moving for summary judgment must conclusively prove all essential elements of its claim. 
MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986). 


DISCUSSION

 Hindman appeals the trial court's judgment in three issues. He argues that the trial
court erred in (1) considering a transcript of a prior injunction hearing as summary-judgment
evidence, (2) finding that the consideration paid by Hindman was grossly inadequate as a matter of
law, and (3) granting attorney's fees to Mrs. Harding. We will address each issue in turn. 


Summary-Judgment Evidence

 Hindman argues that the trial court erred in relying on a transcript of the prior
injunction hearing as summary-judgment evidence. However, Hindman failed to object to the use
of the hearing transcript as summary-judgment evidence in the trial court. To preserve error for
appellate review, a party must make a timely objection stating the specific grounds for the ruling it
seeks from the trial court and must obtain a ruling on the objection. Tex. R. App. P. 33.1(a); Tex.
R. Civ. P. 166a(f); see also Williams v. Conroe Indep. Sch. Dist., 809 S.W.2d 954, 957 (Tex.
App.--Beaumont 1991, no writ) (appellant's failure to object to propriety of summary judgment
evidence in trial court waived error on appeal); Grainger v. Western Cas. Life Ins. Co., 930 S.W.2d
609, 613-14 (Tex. App.--Houston [1st Dist.] 1996, writ denied). The record shows that Hindman
not only failed to object to the court's consideration of the transcript but also requested that the court
read the entire transcript before making a ruling. Because Hindman failed to object and obtain a
ruling regarding the use of the hearing transcript, Hindman waived his right to raise this issue on
appeal. 

 Even if Hindman had preserved error, his argument would fail because the trial court
properly considered the evidence. Hindman specifically contends that the hearing transcript was not
proper evidence under either subsections (c) or (d) of Rule 166a of the Texas Rules of Civil
Procedure. Rule 166a(c) addresses the propriety of evidence on file with the court prior to the
summary-judgment hearing, and 166a(d) addresses the use of summary-judgment evidence not on
file. In this case, the transcript of the injunction was on file with the court more than a month before
Mrs. Harding moved for partial summary judgment and more than two months before the summary-judgment hearing. Thus, Rule 166a(d) is not applicable to this case. Consequently, we must decide
whether the hearing transcript is admissible under Rule 166a(c). 

 Rule 166a(c) lists several types of evidence a court may consider with a summary-judgment motion, including deposition transcripts, interrogatory answers, other discovery responses,
pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public
records. The evidence at issue here is a transcript of the temporary injunction hearing, in which both
parties presented witnesses and conducted direct and cross examinations. The transcript was
certified by the court reporter and filed with the court long before Mrs. Harding moved for partial
summary judgment. Mrs. Harding attached a copy of the transcript to the motion, and the motion
clearly stated that the transcript was attached as evidence. Public records in courts' files are
competent summary-judgment evidence. Sparkman v. Kimmey, 970 S.W.2d 654, 659 (Tex.
App.--Tyler 1998, pet. denied). A court also may take judicial notice of court records in a case
involving the same subject matter and the same parties. Id.; McCurry v. Aetna Cas. & Sur. Co., 742
S.W.2d 863, 867 (Tex. App.--Corpus Christi 1987, writ denied). Further, other courts have
considered transcripts from prior court hearings in the same case as summary-judgment evidence. 
See, e.g., Sparkman, 970 S.W.2d at 659; Bexar Medina Atascosa Water Dist. v. Bexar Medina
Atascosa Landowners' Ass'n, 2 S.W.3d 459, 460-61 (Tex. App.--San Antonio 1999, pet. denied);
H.S.M. Acquisitions, Inc. v. West, 917 S.W.2d 872, 879 (Tex. App.--Corpus Christi 1996, writ
denied). If the issue had been preserved, we would find that the trial court properly considered the
transcript as summary-judgment evidence because the hearing transcript in this case constitutes a
certified public record under Rule 166a(c). We overrule this issue. 


Adequacy of Consideration

 Hindman also argues that the trial court erred in granting partial summary judgment
based on grossly inadequate consideration. He contends that the evidence raises an issue of material
fact regarding the adequacy of consideration. When a party challenges the adequacy of consideration
supporting a contract, courts will not look beyond the face of the contract unless they find
unconscionability, bad faith, or fraud. Parker v. Dodge, 98 S.W.3d 297, 301 (Tex. App.--Houston
[1st Dist.] 2003, no pet.); City of Lubbock v. Phillips Petroleum Co., 41 S.W.3d 149, 161 (Tex.
App.--Amarillo 2000, no pet.); Martin v. Martin, Martin & Richards, Inc., 12 S.W.3d 120, 125
(Tex. App.--Fort Worth 1999, no pet.). For the consideration to be deemed inadequate, it must be
so grossly inadequate that it shocks the conscience and is tantamount to fraud. Phillips Petroleum,
41 S.W.3d at 161; Birdwell v. Birdwell, 819 S.W.2d 223, 227-28 (Tex. App.--Fort Worth 1991, writ
denied); Cearley v. Cearley, 331 S.W.2d 510, 512 (Tex. Civ. App.--Dallas 1960, no writ). A
detriment to the promisee is sufficient consideration to support a contract. Martin, 12 S.W.3d at
125; Birdwell, 819 S.W.2d at 228; Tripp Village Joint Venture v. Mbank Lincoln Ctr., N.A., 774
S.W.2d 746, 749 (Tex. App.--Dallas 1989, writ denied); Hovas v. O'Brien, 654 S.W.2d 801, 803
(Tex. App.--Houston [14th Dist.] 1983, writ denied). An equal exchange is not required to create
a valid consideration. Hovas, 654 S.W.2d at 803. 

 The trial court found that the consideration paid by Hindman was grossly inadequate,
which rendered the bill of sale invalid as a matter of law. In reviewing the trial court's judgment,
we first set forth the evidence in the light most favorable to Hindman. The evidence shows that
Hindman worked for Mr. Harding for nineteen years, that they had been close friends for more than
ten years, and that Hindman viewed Mr. Harding as a father figure. Mr. Harding typed the bill of
sale and asked Hindman to sign it, stating, "If something happens to me, you'll need this." Mr.
Harding informed Hindman that the purpose of the bill of sale was to prevent Harding's son from
obtaining the guns, and he instructed Hindman to retrieve the guns immediately if anything happened
to him. In presenting the bill of sale to Hindman, Mr. Harding did not indicate that Hindman was
to return the guns to Mrs. Harding or to the Hardings' son after retrieving them. Hindman believed
that he owned the guns, not that he was to hold them for Mrs. Harding or her son. Mr. Harding told
three close friends, each on separate occasions, that he created a bill of sale to sell his gun collection
to Hindman in order to preserve it.

 We recognize the great monetary difference between consideration of $12.95 and a
gun collection worth at least $3,000. We also recognize evidence of the close relationship between
the parties and Mr. Harding's expressed motivation for the exchange. In light of the circumstances
set forth in the summary judgment record, we cannot find that the consideration "shocks the
conscience" in a manner to make it inadequate as a matter of law. We accordingly hold that the trial
court erred in granting partial summary judgment because the record does not support a finding of
unconscionability, bad faith, or fraud as a matter of law. 


Attorney's Fees

 Because we reverse the partial summary judgment in this case, we must also reverse
the award of attorney's fees at this time. Any ruling on attorney's fees must await the trial court's
judgment on remand. 


CONCLUSION

 We reverse the trial court's partial summary judgment and remand for further
proceedings. 



 

 Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Reversed and Remanded

Filed: May 5, 2005
1. Mrs. Harding non-suited her remaining claims.