

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00007-CV

_____

QURAN BRYANT, STEPHEN A. BARFIELD, AND GRACE EVERETT, Appellants

V.

DENNIS J. CADY, IND. AND AS TRUSTEE OF THE
DENNIS J. CADY LIVING TRUST D/B/A
CADY ENTERPRISES, Appellee

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. 178,120-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

# OPINION

Certain executory contracts for conveyance of Texas real estate that is used or is to be used as the purchaser's residence or the residence of certain relatives of the purchaser are statutorily regulated. *See* TEX. PROP. CODE ANN. §§ 5.061–.085 (West 2004 & Supp. 2014); *see also Morton v. Nguyen*, 412 S.W.3d 506, 507 (Tex. 2013). Sellers under covered contracts must, among other things, provide to the purchaser, during January of each year during the contract's term, an annual accounting statement with specified contents or pay liquidated damages[1] and reasonable attorney fees. TEX. PROP. CODE ANN. § 5.077. Three different individuals, Quran Bryant, Stephen A. Barfield, and Grace Everett, sued Dennis J. Cady, individually and as Trustee of the Dennis J. Cady Living Trust d/b/a Cady Enterprises (Cady), claiming to be purchasers under covered executory contracts and alleging that Cady failed to give them the required annual accounting statement regarding their respective transactions with him. In none of these three transactions was any annual statement furnished; in each case, the dispute is whether the contract is an executory contract under the statute. By motions for summary judgment, Cady obtained the

---

[1]A seller who conducts less than two executory transactions in a twelve-month period and who fails to provide the required accounting statements is liable for:

> (1)    liquidated damages in the amount of $100 for each annual statement the seller fails to provide to the purchaser within the time required by Subsection (a); and
> (2)    reasonable attorney's fees.

TEX. PROP. CODE ANN. § 5.077(c)(1)-(2). If a seller conducts two or more executory transactions in a twelve-month span and also fails to provide the required accounting statements, the seller is liable for:

> (1)    liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement, but not to exceed the fair market value of the property; and
> (2)    reasonable attorney's fees.

TEX. PROP. CODE ANN. § 5.077(d)(1)-(2).

2

trial court's ruling that none of the transactions involved an executory contract. We reverse the summary judgment and remand this case to the trial court for further proceedings, because each transaction involved an executory contract within the meaning of the statute.

Cady entered into three very similar transactions regarding three separate parcels of real property in Wichita Falls,[2] Texas, with Bryant and Barfield in 2006 and with Everett in 2010. Both the Bryant and Barfield transactions involved three documents, a lease, a sale agreement, and a receipt. In the Everett transaction, a separate lease was executed and receipt language was incorporated into the sale agreement. The three transactions were structured essentially the same way, each involving a ten-year term lease of residential real estate followed by a discounted sale of the respective property to the lessee.[3]

---

[2]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[3]On April 20, 2006, Cady agreed to lease a parcel of real property to Bryant. The lease required a $1,000.00 security deposit, and the term of the lease was to commence April 21, 2006, and end ten years later. On the same day Cady signed the lease, he also signed an agreement to sell the property to Bryant for $24,194.20. The agreement specified the closing date as being "within thirty days of April 1, 2016"—that is, within a few weeks of the lease's expiration. Also on April 20, 2016, Cady gave Bryant a signed receipt, acknowledging the receipt of $1,000.00 "for payment on 2404 9th; Wichita Falls, Texas." Whereas both Bryant and Cady signed the lease, only Cady signed the agreement to sell and the receipt.

A few months later, on July 4, 2006, Cady agreed to lease a second piece of real property to Barfield. The lease to Barfield required a $1,000.00 security deposit and also had a ten-year term, starting on July 5, 2006. Just as he did with Bryant, on the same day he signed the lease to Barfield, Cady also signed an agreement to sell the property to Barfield for $21,851.84, with a closing date to be "within thirty days of July 1, 2016." Also on July 4, 2006, Cady gave Barfield a signed receipt, acknowledging the receipt of $1,000.00 "for partial payment on 1920 Hines; Wichita Falls, Texas." As with Bryant's documents, Barfield and Cady signed the lease, but only Cady signed the agreement to sell and the receipt.

On April 24, 2010, Cady leased a third piece of real property, "1632 Orchard," to Everett. The lease called for a ten-year term beginning on May 1, 2010, and required the payment of a $500.00 security deposit. On the same day the lease was signed, Cady and Everett entered into an "agreement to buy and sell real estate" wherein Cady agreed to sell the property to Everett for $21,000.00. The agreement specified that the closing date was to be on May 1, 2020, "or as soon thereafter as parties can meet for this purpose," and it also acknowledged the receipt of $500.00 "[f]rom buyer." In Everett's case, both Cady and Everett signed the lease and the sales agreements.

Bryant, Barfield, and Everett filed a joint declaratory judgment action, alleging that the documents signed by the parties amounted to executory contracts and that Cady had failed to provide them with the required annual accounting statements. They sought liquidated damages, attorney fees, and courts costs. Cady's traditional motion for summary judgment argued that (a) the Bryant and Barfield sale agreements were not executory contracts because they lacked consideration and acceptance and were, therefore, unenforceable unilateral contracts, (b) the Bryant and Barfield sale agreements were not options to purchase, and (c) the Everett documents were a typical real estate contract rather than an executory contract. The trial court granted Cady's motion, entered summary judgment for Cady, and awarded him $8,032.48 in attorney fees. The plaintiffs filed this joint appeal.

On appeal, Bryant, Barfield, and Everett contend that the trial court erred in granting summary judgment because (1) the Bryant and Barfield sale agreements are supported by consideration, (2) the Appellants' agreements, as leases executed concurrently with an option to purchase, are executory contracts, (3) the Everett sales agreement is not a typical real estate contract, and, in the alternative, (4) the documents in question are ambiguous.

We reverse the trial court's order granting summary judgment and remand the case for further proceedings, because (1) the Bryant and Barfield sale agreements are enforceable contracts supported by consideration and acceptance, (2) the Bryant and Barfield transactions are executory contracts, and (c) the Everett transaction is an executory contract.[4]

---

[4]The parties do not dispute the validity of the leases.

A traditional motion for summary judgment is granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). An appellate court reviews de novo the grant or denial of a motion for summary judgment. *Id.*

We will interpret the terms of a contract based on "the plain, ordinary and generally accepted meaning attributed to the term or word." *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 598 (Tex. App.—Texarkana 2008, no pet.). If a written instrument's text can be given a definite legal meaning, the contract is not ambiguous and must be construed as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Holland v. Holland*, 357 S.W.3d 192, 195–96 (Tex. App.—Dallas 2012, no pet.). If the language of a contract is subject to two or more reasonable interpretations, it is ambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995); *Holland*, 357 S.W.3d at 196.

The primary issue in this case is whether each set of documents, collectively, amount to an executory contract. Executory contracts are also known as contracts for deed. *Morton*, 412 S.W.3d at 507; *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005). A contract for deed differs from a conventional contract for the sale of realty, in which the seller and purchaser mutually agree to complete payment and title transfer on a date certain at which time the purchaser generally obtains both title and possession. *Shook v. Walden*, 368 S.W.3d 604, 625 (Tex. App.—Austin 2012, pet. denied). An executory contract for real property typically results in the buyer being entitled to immediate possession of the property on the making of a down payment. *Ward v. Malone*, 115 S.W.3d 267, 271 (Tex. App.—Corpus Christi

5

2003, pet. denied). A contract for deed differs from a mortgage in that it allows the seller to retain title to the property until the purchaser has made all the purchase payments. *Flores*, 185 S.W.3d at 429.

*(1)* *The Bryant and Barfield Sale Agreements Are Enforceable Contracts Supported by Consideration and Acceptance*

There is no dispute that all three leases are supported by consideration. However, at trial, Cady argued that the Bryant and Barfield agreements are not executory contracts, because the agreements to sell were not supported by consideration—that neither Bryant nor Barfield are obligated to do anything under the agreements to sell. The Appellants contend that the $1,000.00 acknowledged in the receipts is consideration for both the lease and the agreements to sell.

Consideration is a fundamental element of every valid contract. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997); *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App.—Tyler 2010, no pet.). What constitutes consideration is a question of law, *Brownwood Ross Co. v. Maverick Cnty.*, 936 S.W.2d 42, 45 (Tex. App.—San Antonio 1996, writ denied), and the existence of a written contract presumes consideration for its execution. *Doncaster v. Hernaiz*, 161 S.W.3d 594, 603 (Tex. App.—San Antonio 2005, no pet.).

Consideration is a present exchange bargained for in return for a promise and consists of benefits and detriments to the contracting parties. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991); *Burges*, 304 S.W.3d at 628. For consideration to exist, there must be either a benefit to the promisor or a detriment to the promisee. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 670–71 (Tex. App.—Fort Worth 2010, no pet.). A promisor "benefits" when the promisor acquires a legal right to which the promisor would not otherwise be entitled in

6

exchange for a promise. *N. Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998). A promisee suffers a legal "detriment" when, in return for a promise, the promisee surrenders a legal right that the promisee otherwise would have been entitled to exercise. *Id.* Lack of consideration occurs when the contract, at its inception, does not impose obligations on both parties. *Burges*, 304 S.W.3d at 628.

Here, the leases call for a $1,000.00 security deposit, and the receipts acknowledge the receipt of $1,000.00 from both Bryant and Barfield. The Bryant and Barfield receipts respectively read:

> This is to acknowledge receipt of $1000. for payment on 2404 9th; Wichita Falls, Texas. This obligates all parties to the agreements signed this date. It is agreed that the property is accepted in as is condition. It is also agreed that before the key and possession are given Cady must receive in cash and in person $143. for rent for the balance of April. Cady may be contacted at 631-1985 to schedule making the payment. In the event the rent money is not received by 5:00 p.m. April 28, 2006, all agreements are null and void and the $1000. given at this time is forfeited to Cady.
>
> April 20, 2006
>
> This is to acknowledge receipt of $1000. for partial payment on the property at 1920 Hines; Wichita Falls, Texas. This binds all parties to the paperwork signed this date. It is agreed that the property is accepted in as is condition. It is also agreed that Cady will receive IN CASH and IN PERSON $341. by 5:00 p.m. July 11, 2006. This will pay everything due to August l, 2006. Possession will be given on receipt of the $341. In the event the $341. is not received by the above deadline, all agreements are null and void, the $1000. given at this time is forfeited and Cady may do with the property as he wishes.
>
> July 4, 2006

7

Cady contends that the $1,000.00 noted in the receipts is nothing more than the security deposit required under the leases and that neither Bryant nor Barfield are obligated to do anything under the agreements to sell. We disagree.

While the receipts mention rent several times, they reference neither the lease nor a security deposit. The receipts plainly state that Cady's receipt of the $1,000.00 from Bryant and Barfield obligates and binds "all parties" to the "agreements" or "paperwork" signed on that date. Here, it is undisputed that the Bryant and Barfield leases were signed on the same date as their respective agreements to sell. The receipts also state that failure to make the first month's rent payments on time means "all agreements are null and void."

Where two instruments are executed as part of the same transaction, the consideration given in one may support collateral promises made in the other.[5] *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 660, n.4 (Tex. 2006) (citing *Birdwell v. Birdwell*, 819 S.W.2d 223, 228 (Tex. App.—Fort Worth 1991, writ denied); *Mitchell v. Lawson*, 444 S.W.2d 192, 196 (Tex. Civ. App.—San Antonio 1969, no writ)). Each of the Bryant and Barfield receipts has unambiguous language acknowledging the existence of multiple agreements and stating that the

---

[5]Cady, citing *Birdwell v. Birdwell* and *Mason v. Babin*, argues that the lease and the agreement to sell must each be supported by new, independent consideration, and therefore, the $1,000.00 cannot be consideration for both. *Birdwell*, 819 S.W.2d 223, 228 (Tex. App.—Fort Worth 1991, writ denied); *Mason v. Babin*, 474 S.W.2d 809, 812 (Tex. App.—Waco 1971, writ ref'd n.r.e.). However, *Birdwell* does not support Cady's positions because in *Birdwell*, the court of appeals held that one spouse's acquiescence in the couple's property settlement incident to divorce was consideration for alimony and other promises bargained for in the divorce proceedings. *Birdwell*, 819 S.W.2d at 228. In *Mason v. Babin*, Mason hired Babin through an employment agreement, but eight months later, terminated him, and according to Babin, at the time of termination, Mason promised to pay Babin's house note in lieu of severance pay. *Mason*, 474 S.W.2d at 810. Babin sought to enforce Mason's promise, and argued that the consideration of the employment agreement also served as consideration for Mason's promise upon termination, but the court of appeals agreed with Mason, found the promise unenforceable, and held that the new promise must be based on new consideration, separate and apart from the employment agreement. *Id*. at 812. The facts of *Mason* are distinguishable from those of the present case because while the promises and agreements in *Mason* were made eight months apart, here, the leases, agreements to sell, and the receipts were all signed on the same day.

$1,000.00 payment binds all parties to multiple agreements. In each case, both the lease and the agreement to sell were signed on the same day. As the documents for each transaction should be read together, we conclude that each has been accepted and is binding on the parties.

Furthermore, each agreement states that "[t]his agreement, in its entirety, IS CONDITIONED ON the buyer(s) making their/his/her monthly rental payments in a timely manner." Clearly, Bryant and Barfield are obligated to make a decades' worth of timely rental payments under the lease before they may exercise their rights to purchase the property under the agreement to sell. Accordingly, we find the Bryant and Barfield agreements are supported by sufficient consideration.

*(2)    The Bryant and Barfield Transactions Are Executory Contracts*

As part of his motion for summary judgment, Cady argued that the Appellants' documents were not executory contracts because the agreements to sell were not options to purchase.

For purposes of the annual accounting requirement, the Texas Property Code provides, in pertinent part, that

> [a]n option to purchase real property that includes or is combined or executed concurrently with a residential lease agreement, together with the lease is considered an executory contract for conveyance of real property.

TEX. PROP. CODE ANN. § 5.062(a)(2).

It is undisputed that the Bryant, Barfield, and Everett leases, being signed on the same day, were executed concurrently with the agreements to sell. We must interpret the agreements and determine whether they are options to purchase. An option provides a right to buy certain

9

property at a fixed price within a certain time. *Faucette v. Chantos*, 322 S.W.3d 901, 907 (Tex. App.—Houston [14th Dist.] 2010, no pet.). An option contract has two components, (1) an underlying contract that is not binding until accepted and (2) a covenant to hold open to the optionee the opportunity to accept. *Comeaux v. Suderman*, 93 S.W.3d 215, 220 (Tex. App.— Houston [14th Dist.] 2002, no pet.); *Hott v. Pearcy/Christon, Inc.*, 663 S.W.2d 851, 853 (Tex. App.—Dallas 1983, writ ref'd n.r.e.).

The three agreements to sell are substantially similar.[6] The agreements state that Cady, "agrees to sell" a specific property to the buyer for a relatively low price, $24,194.20 for Bryant, $21,851.84 for Barfield, and $21,000.00 for Everett. The agreements mandate closing dates shortly after the expiration of each Appellant's lease—within thirty days of April 1, 2016, for Bryant, within thirty days of July 1, 2016, for Barfield, and within thirty days of April 1, 2020, for Everett. In each, Cady offers to provide owner financing after the transfer of title, over a ten year period at a specific monthly payment amount. The final two provisions of all three agreements state,

> Buyer(s) cannot assign or transfer by other means their/his/her rights in this agreement to any other person. However any heirs or assigns of this property who shall succeed Cady shall be bound by this sales agreement.

> This agreement, in its entirety, is conditioned on the buyer(s) making their/his/her monthly rental payments in a timely manner. Should the buyer(s) move from the property by abandonment, eviction due to non payment or any other reason

---

[6]There are three noticeable differences between Everett's agreement and those of Bryant and Barfield. The Bryant and Barfield agreements state that Cady "agrees to sell" to the buyer, but Everett's agreement also states that Everett "agree(s) [t]o buy." Whereas only Cady signed the Bryant and Barfield agreements, both parties signed Everett's agreement. While Everett's agreement acknowledges the payment of consideration and the binding of all parties, that same acknowledgement is made in the receipts for Bryant and Barfield.

whatsoever, this agreement shall automatically and immediately become null and void.[7]

Cady contends that the agreements are not options because (1) neither Bryant nor Barfield have the option to purchase the property within a given time period leading up to the closing date, (2) Cady is not obligated to hold open the opportunity to accept for a given time period, and (3) Everett's agreement is a "typical real estate contract" that "binds Cady to sell and Everett to buy the property." We disagree.

By the unambiguous terms of the agreement, as long as the Appellants live on the property for the ten years of the lease and make timely rental payments, Cady is obligated to sell them the property. By their actions, any of the three Appellants may elect or decline to purchase the property. If they live on the property for the ten-year lease period and timely pay all their rental payments, they have elected to purchase the property and, like Cady, are bound to the purchase/sale. However, if any of the Appellants choose not to purchase the property, they need only move from the property at any time, thereby rendering the sale agreement "null and void." Both Cady and the Appellants are bound to the agreements, but only the Appellants have the option to decline the purchase.

Cady also argues that Everett's contract is a typical real estate contract that "binds Cady to sell and Everett to buy the property." In a typical real estate contract, the seller and purchaser mutually agree to complete payment and title transfer on a date certain, the closing date, at which time the purchaser generally obtains both title and possession. *See Shook*, 368 S.W.3d at 625. By contrast, in an executory contract, the purchaser is usually given immediate possession, but is

---

[7] In Bryant's and Barfield's agreements, the phrase "is conditioned upon" is emphasized in all capital letters.

required to satisfy numerous obligations over an extended period of time before the seller has an obligation to transfer actual title. *Id.* at 627; *Ward v. Malone*, 115 S.W.3d 267, 270–71 (Tex. App.—Corpus Christi 2003, pet. denied). Here, in order to obtain title from Cady, Everett, like Bryant and Barfield, must make lease payments for ten years, continuously live on the property for that same period, and pay the sales price within a few weeks of the end of the lease term.

Under an executory contract, the buyer has the right, but no obligation, to complete the purchase, *Gaona v. Gonzales*, 997 S.W.2d 784, 786–87 (Tex. App.—Austin 1999, no pet.). But, in a typical real estate contract, the buyer must complete the purchase. *Carroll v. Wied*, 572 S.W.2d 93, 95 (Tex. Civ. App.—Corpus Christi 1978, no writ). Here, Everett is no more obligated to complete the purchase than Bryant and Barfield, because any of the three may, at any time during the lease term, cause the agreement to become "null and void" by moving away from the property or not paying rent.

Based on the foregoing, the Bryant, Barfield, and Everett agreements are, in effect, options to purchase and, given that they were executed concurrently with residential leases, are executory contracts within the meaning of the statute.[8]

---

[8]Given our reversal of the trial court's summary judgment, we need not address the Appellants' point of error regarding attorney fees, because that award necessarily falls with the rest of the summary judgment. *Strange v. HRsmart, Inc.*, 400 S.W.3d 125, 130 (Tex. App.—Dallas 2013, no pet.); *Powers v. Adams*, 2 S.W.3d 496, 500 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Accordingly, we reverse the trial court's order granting summary judgment and remand the case for further proceedings.

Josh R. Morriss, III
Chief Justice

Date Submitted:    July 1, 2014
Date Decided:     September 18, 2014