

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00500-CV

———————————————

ROSA ARREOLA AND CARLOS PADILLA, HUSBAND AND WIFE,
APPELLANTS

V.

SAMMY BROWN AND ALL THOSE HAVING AN INTEREST IN THE
PROPERTY LOCATED AT 7404 GLEN HAVEN DRIVE, 76133-7704,
APPELLEES

AND

ROSA ARREOLA AND CARLOS PADILLA, HUSBAND AND WIFE,
APPELLANTS AND APPELLEES

V.

RYDER MITCHELL JENSEN AND ALISON MARGARET JENSEN,
HUSBAND AND WIFE, APPELLEES AND APPELLANTS

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-331059-21

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellants Rosa Arreola and Carlos Padilla, husband and wife, appeal the trial court's order granting summary judgment in favor of Appellees Ryder Mitchell Jensen and Alison Margaret Jensen (the Jensens) and Sammy Brown. In a cross-appeal, the Jensens appeal the trial court's summary dismissal of their "conditional" counterclaim with prejudice. We conclude that Appellants' claims are time-barred as a matter of law and that the trial court erred by dismissing the Jensens' counterclaim with prejudice. Accordingly, we modify the trial court's order to reflect that the Jensens' counterclaim is dismissed without prejudice, and we affirm the summary judgment as modified.

## I. Background

### A. Factual Background

In March 2015, Appellants negotiated the purchase of a home from Brown (the property) and agreed on a sales price of $91,000. For this real estate transaction, the parties executed a standard Texas Real Estate Commission (TREC) form titled, "One to Four Family Residential Contract (Resale)," which incorporated a signed "Seller Financing Addendum" (collectively, the Purchase Agreement). Per the Purchase Agreement, Brown agreed to finance the sales price; to obtain seller financing, Appellants were required to provide Brown with credit information and execute a promissory note in the amount financed secured by a deed of trust giving Brown a security interest in the property. The Purchase Agreement set a closing date of April 1, 2015. At closing, Brown was required to "execute and deliver a general warranty

deed conveying title" to Appellants, and Appellants were required to "pay the [s]ales [p]rice."

Appellants asked Brown if they could move into the property before the closing date, assuring him that they would provide the requisite credit information and loan documents. On their assurance, Brown allowed Appellants to take possession of the property. After they took possession of the property, Appellants told Brown that they would obtain third-party financing.

Appellants failed to provide Brown with the necessary credit information or to execute a promissory note or deed of trust giving Brown a security interest in the property by the closing date. Thus, Brown did not give Appellants credit approval for a seller-financed loan. Appellants had also failed to obtain third-party financing. Brown therefore did not execute and deliver a warranty deed conveying title of the property to Appellants, and the real estate transaction did not close on April 1, 2015.

Brown subsequently allowed Appellants to keep possession of the property, and from March 2015 until December 2021, Appellants made monthly payments to Brown. Brown claimed that the real estate transaction had been terminated and that pursuant to a verbal, month-to-month lease, Appellants' monthly payments were rent payments. Appellants, on the other hand, believed that their monthly payments were for a "loan" pursuant to the Purchase Agreement.

At some point, Appellants moved out of the property. In February 2020, Appellants leased the property to third-party tenants, who took possession of the

4

property in March 2020. In November 2021, after Brown discovered that Appellants had "abandoned the [p]roperty" and "clandestinely started renting it out," he entered into an agreement to sell the property to the Jensens. On December 30, 2021, the Jensens purchased the property from Brown; Brown and the Jensens executed a contract for the sale of real estate, and Brown executed and delivered a general warranty deed conveying title to the Jensens.

## B. Procedural Background

On December 22, 2021, Appellants sued Brown to quiet title to the property and for violations of Chapter 5, Subchapter D of the Property Code; breach of contract; and fraud. Brown answered and filed counterclaims against Appellants. After the Jensens purchased the property from Brown, Appellants amended their petition and added the Jensens as defendants. The Jensens answered and filed a counterclaim against Appellants and a cross-claim against Brown.

Brown moved for partial summary judgment arguing that there was no executory contract, that the quiet-title claim was against the Jensens and not him, and that Appellants' causes of action were barred by the statute of limitations. The trial court granted Brown partial summary judgment and rendered judgment in favor of Brown on all of Appellants' claims and causes of action against him. The Jensens also filed a motion for partial summary judgment, but the trial court did not rule on it.

The trial court subsequently granted Appellants leave to amend their petition, and Appellants filed their second amended petition on April 1, 2024. Appellants'

5

second amended petition raised the same causes of action against Brown—including the ones addressed in the trial court's partial summary judgment—and the Jensens and added several new equitable theories to defeat the statute of limitations.

After Appellants filed their second amended petition, Brown and the Jensens filed a joint motion for partial summary judgment. In their motion, they argued against Appellants' newly asserted equitable theories, Brown re-urged his previous summary judgment evidence and arguments to ensure clarity, and the Jensens sought a ruling on their pending motion for partial summary judgment. The trial court granted the motion on May 30, 2024, and ordered that all the claims and causes of action asserted by Appellants against Brown and the Jensens were denied in their entirety.

The same day that the trial court granted the joint motion for summary judgment, it also granted Appellants' motion for leave to file their third amended petition; Appellants filed their third amended petition the following day. In their third amended petition, Appellants again raised the same claims against Brown and the Jensens but also raised new claims.

Brown and the Jensens subsequently filed a joint motion for pre-trial conference seeking clarification on "what issues of fact [Appellants] believe remain unsettled and that might still need to be decided at trial." Appellants then filed a "Motion to Amend Order on Summary Judgment to Allow Interlocutory Appeal,"

which Brown and the Jensens opposed. The trial court heard the motions in September 2024; it granted the motions in part and denied the motions in part.

On October 11, 2024, the trial court rendered its final judgment. In its judgment, the trial court severed Appellants' newly raised claims, Brown's counterclaims against Appellants, and the Jensens' cross-claim against Brown. It then ordered that any remaining claims, counterclaims, or cross-claims were fully and finally dismissed in their entirety and that the party asserting such claim, counterclaim, or cross-claim take nothing. The judgment stated that it was final and disposed of all claims and all parties.

## II. Standard of Review

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

A defendant is entitled to summary judgment on a statute-of-limitations affirmative defense if he conclusively establishes the defense as a matter of law. *Burton v. Labor*, No. 02-18-00179-CV, 2019 WL 237736, at *2 (Tex. App.—Fort Worth Jan. 17, 2019, no pet.); *see Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex.

2010). The defendant must prove when the cause of action accrued and negate any properly raised tolling doctrine. *Pustejovsky v. Rapid–Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the defendant establishes that the statute of limitations bars the action, the plaintiff must then adduce summary judgment evidence raising a fact issue in avoidance of the statute of limitations. *KPMG Peat Marwick*, 988 S.W.2d at 748. The evidence raises a fact issue if reasonable factfinders could differ in their conclusions in light of all the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

### III. Analysis

In four issues, Appellants argue that the trial court erred (1) by applying the wrong statute of limitations for performance under a real estate loan when, under Section 16.035(e) of the Civil Practice and Remedies Code, the limitations period does not begin to run until the maturity date of the last note, obligation, or installment; (2) by dismissing Appellants' fraud claims without requiring the movant to conclusively negate the fraud claims; (3) by failing to apply Property Code Chapter 5, Subchapter D on executory contracts and improperly concluding that Appellants had waived their right to demand a deed at any time; and (4) because under the contract, Appellants were entitled to rent out the property for up to three years. In their cross-appeal, the Jensens argue that the trial court's summary dismissal of their conditional counterclaim with prejudice was harmful error.

8

"[A] cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). Appellants' causes of action were subject to a four-year limitations period. *See* Tex. Civ. Prac. & Rem. Code §§ 16.004(a), 16.051. Based on the summary judgment record, Appellees established that Appellants' causes of action accrued on April 1, 2015—the closing date—and that no tolling doctrine applied to toll the limitations period on Appellants' claims. Appellants failed to adduce summary judgment evidence raising a fact issue to the contrary. We therefore conclude that, because Appellants did not file their lawsuit until December 2021, their claims were barred by the statute of limitations. We further conclude that the trial court erred by dismissing the Jensens' counterclaim with prejudice because the counterclaim had not been adjudicated.

**A. The Real Estate Transaction**

We first determine whether the Purchase Agreement constituted an executory contract or a contract for sale. Appellants raise conflicting arguments by asserting both (1) that the Purchase Agreement was a contract for sale involving a thirty-year loan and (2) that the Purchase Agreement was an executory contract requiring Appellants to make scheduled payments due under the contract and permitting Appellants to "override" the transaction's April 1, 2015 closing date and demand a deed "for as long as they were making payments." Appellees argue that the Purchase Agreement was a contract for sale that "went unfulfilled . . . because Appellants failed

9

to comply with the seller-financing requirements of the transaction." According to Appellees, the evidence shows that Appellants "all but conceded" during discovery that the real estate transaction "involved no executory contract."

A contract for deed is an executory contract that provides an alternative way to purchase real property without obtaining conventional mortgage financing; under such a contract, the seller retains title until the purchaser has paid for the property in full over a period of time. *Morton v. Hung Nguyen*, 412 S.W.3d 506, 509–10 (Tex. 2013); *Flores v. Millennium Ints., Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005); *see Shook v. Walden*, 368 S.W.3d 604, 627 (Tex. App.—Austin 2012, pet. denied) (noting that an executory contract "contemplates that a purchaser satisfy a series of obligations over an extended period of time before the seller has an obligation to transfer title"). This type of real estate transaction "differs from a conventional contract for the sale of realty, in which the seller and purchaser mutually agree to complete payment and title transfer on a date certain at which time the purchaser generally obtains both title and possession" simultaneously—the closing date. *Bryant v. Cady*, 445 S.W.3d 815, 819 (Tex. App.—Texarkana 2014, no pet.). Further, under a contract for deed, "the buyer has an equitable right, but no obligation, to complete the purchase." *Shook*, 368 S.W.3d at 625. But under a contract for sale, the buyer "is contractually obligated to complete the purchase and may be liable for breach upon failure to pay the seller." *Id.*

Here, the summary judgment evidence shows that the Purchase Agreement was a conventional contract for sale. The timing and mechanism of title transfer

10

contemplated by the Purchase Agreement distinguishes it from an executory contract. Specifically, Appellants and Brown agreed to complete payment (via a promissory note secured by a deed of trust from Appellants to Brown) and to transfer title on a date certain (the April 1, 2015 closing date), and Brown agreed to deliver possession of the property to Appellants upon such funding. Thus, by its clear and unambiguous language, the Purchase Agreement contemplated that the parties would fulfill their transactional obligations on April 1, 2015, and that Brown would not retain title.

Further, Appellants were obligated to complete the purchase and were subject to liability upon failure to pay. The Purchase Agreement stated that "[i]f either party fail[ed] to close the sale by the [c]losing [d]ate, the non-defaulting party [could] exercise the remedies contained in" the Purchase Agreement's default provision. The default provision provided that, if Appellants "fail[ed] to comply with this contract, [Appellants] w[ould] be in default, and [Brown could] . . . enforce specific performance, seek such other relief as may be provided by law, or both, or . . . terminate this contract and receive the earnest money as liquidated damages."

In Appellants' responses to the Jensens' request for admissions, which Appellees included in their summary judgment evidence, Appellants acknowledged that the Purchase Agreement set a closing date of April 1, 2015, and that at closing, Brown would convey title to Appellants and Appellants would pay the sales price. Appellants also acknowledged that they were required to pay the purchase price at closing by securing a promissory note with vendor's and deed of trust liens. When

asked about an alleged transfer of title after thirty years, Appellants admitted (1) that they had "no documents, tangible, or electronic evidence supporting [their] assertion that Mr. Brown promised that he would provide [them] with a deed in recordable form at the end of [thirty] years" and (2) that the Purchase Agreement did not contain any provision stating that Appellants "were required to complete payments under the Seller Financing Addendum before a deed would be provided."

In an affidavit supporting summary judgment, Brown stated that he allowed Appellants to move into the property prior to the closing date on Appellants' assurance that they would provide the necessary credit information and signed loan documents. When Appellants failed to provide credit information or signed loan documents, including a promissory note or deed of trust, Brown did not approve Appellants for a seller-financed loan. Brown averred that after Appellants moved into the property, they notified him that they would obtain financing from a third-party lender. But because Appellants did not fulfill their obligations to obtain seller financing in accordance with the terms of the Purchase Agreement, the Purchase Agreement "never materialized or it came to an end." After the Purchase Agreement had been terminated, Brown allowed Appellants to maintain possession of the property as tenants under a verbal month-to-month lease. Brown stated that he paid the ad valorem taxes and property insurance payments and that he collected monthly

12

rent payments from Appellants until he learned that they had abandoned the property and had begun renting it to a third party.[1]

In an affidavit opposing summary judgment, Arreola stated that she and her husband purchased the property via "a seller-finance agreement from . . . Brown on or about April 1, 2015." Brown "represented to [her]" that the monthly payments he collected from them were for a "loan." Arreola "intended not only to make monthly payments, but to eventually pay the loan off early." Brown "never told [her] that he intended to treat [their] arrangement as a rental"; rather, he told her that Appellants would receive a deed when they paid the loan off. Arreola stated that she "believed that upon [thirty] years of payments . . . [Appellants] would own" the property.

In a subsequent "Declaration in Lieu of Affidavit," Arreola attempted "to clarify [her] prior statements." In the declaration, Arreola stated that it was her understanding that "Brown would give a deed to the property when [Appellants] made [their] last payment under the financing agreement." Arreola claimed that she "did not understand" that Brown was to "provide [Appellants] with a deed to the [p]roperty on April 1, 2015. . . . If the [Purchase Agreement] required a deed on April 1, 2015, then [she] made a mistake" both when she signed the Purchase Agreement

---

[1]The affidavit of an interested witness may support summary judgment if it is "clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Scott v. U.S. Bank, Nat'l Ass'n*, No. 02-12-00230-CV, 2014 WL 3535724, at \*4 (Tex. App.—Fort Worth July 17, 2014, no pet.) (quoting former Rule 166a(c)); *see Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997) ("The mere fact that the affidavit is self-serving does not necessarily make the evidence an improper basis for summary judgment.").

and when she explained its terms to her husband—he could not read English—and he signed it based on her explanation. Arreola stated that she and her husband "did not discover that [they] had made some kind of mistake until" December 2021.

We conclude that the summary judgment evidence shows that the Purchase Agreement was not a contract for deed but was a conventional contract for sale. *See Moreno v. Tidwell*, No. 04-24-00387-CV, 2026 WL 516451, at *1, *17 (Tex. App.—San Antonio Feb. 25, 2026, no pet.) (holding that there was an original contract for sale; sale of real property was seller financed and included a promissory note secured by a vendor's lien, a warranty deed with a vendor's lien, and a deed of trust and buyer agreed to pay property taxes); *White v. Calvache*, No. 05-17-00127-CV, 2018 WL 525684, at *6 (Tex. App.—Dallas Jan. 24, 2018, no pet.) (concluding that "there was no executory contract" when seller agreed to sell property and deed title to buyer, buyer agreed to pay cash down payment and assume payments on existing loans on the property, and both parties fulfilled transactional obligations on closing date and holding that trial court did not err by granting summary judgment in favor of seller); *Shook*, 368 S.W.3d at 624–25, 627 (holding that land contract was not a contract for deed but rather a conventional contract for sale that contemplated a discrete closing date at which parties agreed to conclude exchange of payment for title); *see also Gutierrez v. Rios*, 621 S.W.3d 907, 915 (Tex. App.—El Paso 2021, no pet.) (noting the lack of authority supporting appellant's position that the lack of lease agreement or specific monthly rent payments established that appellant's payments to appellee were

14

part of agreement for sale of property and eventual execution of deed and upholding trial court's finding that there was no meeting of the minds concerning any such sale); *Cate v. Woods*, 299 S.W.3d 149, 153 (Tex. App.—Texarkana 2009, no pet.) (stating that contract for sale of real property was contingent on buyer's obtaining financing by closing date; when buyer failed to obtain financing timely, contract terminated); *Nguyen v. Woodley*, 273 S.W.3d 891, 898 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (concluding that contract for sale was contingent on buyer's ability to obtain financing; when buyer gave notice of inability, contract terminated); *cf. Smith v. Davis*, 462 S.W.3d 604, 609 (Tex. App.—Tyler 2015, pet. denied) (op. on reh'g) (concluding that written contract, based on its clear and unambiguous language, was an executory contract because it stated that seller retained title to the property "until all payments hereunder have been paid in full"); *Bryant*, 445 S.W.3d at 823 (holding that agreements at issue were executory contracts when seller was not obligated to transfer title until buyers satisfied their obligations to make lease payments for ten years while continuously living on property and buyers were not obligated to complete purchase but could cause agreements to become "null and void" by ceasing payments or moving away).

To the extent that Appellants argue that the Seller Financing Addendum individually constitutes evidence of an executory contract, a seller-financing transaction is not a contract for deed. *See Morton*, 412 S.W.3d at 509–10 (stating that a contract for deed is unlike a typical secured transaction involving a deed of trust);

*Flores*, 185 S.W.3d at 429 (noting that a mortgage is not an executory contract); *see also D & K Transmission Specialties, Inc. v. Davis*, No. 09-14-00305-CV, 2014 WL 7183936, at *2–3 (Tex. App.—Beaumont Dec. 18, 2014, no pet.) (recognizing as different real estate transactions a contract for deed and a seller-financed conveyance); *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that, in the context of contract formation, a seller-financing term in a contract for the sale of real property is a material term).

To the extent that Appellants attempt to argue the existence of an executory contract outside of the Purchase Agreement, they did not raise this argument in the trial court. *See* Tex. R. App. P. 33.1. Nevertheless, the Purchase Agreement explicitly stated that it "contain[ed] the entire agreement of the parties and c[ould ]not be changed except by their written agreement." Moreover, an executory contract is subject to the statute of frauds and "is not enforceable unless the contract is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Prop. Code § 5.072; *Nguyen v. Yovan*, 317 S.W.3d 261, 267 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Appellants have not pointed us to any evidence in the record—and we have found none—of a written and signed executory contract.[2]

---

[2]The record contains a TREC-form "Amendment" to the Purchase Agreement that purportedly incorporated an "Owner Financing Agreement." The Owner Financing Agreement referred to a "mortgage contract" and provided detailed terms for payment: (1) the sale price was $91,000; (2) Appellants would provide a down payment of $9,000, $6,000 of which was due immediately and $3,000 of which was to be paid in installments over a period of six months, in addition to the mortgage

**B. Section 16.035(e) of the Civil Practice and Remedies Code**

In their first issue, Appellants contend that the trial court erred by applying the wrong statute of limitations for performance under a real estate loan. According to Appellants, the trial court should have tolled the limitations period under Civil Practice and Remedies Code Section 16.035(e) and determined that the limitations period "d[id] not begin to run until the maturity of the [thirty-year] note, which would be in 2045." Appellants cite no legal authority to support this contention, nor do they provide any record citations. *See* Tex. R. App. P. 38.1(i) (requiring that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). To the extent that Appellants have not waived this issue due to inadequate briefing, *see* Tex. R. App. P. 38.9, we conclude that the trial court did not err by not tolling the limitations period under Section 16.035(e).

Section 16.035 provides a four-year limitations period for a "suit for the recovery of real property under a real property lien or the foreclosure of a real property lien." Tex. Civ. Prac. & Rem. Code § 16.035(a). When a "series of notes or

---

payment; and (3) Brown would finance the remaining $82,000 to Appellants with installments to commence on May 1, 2015, for a period of thirty years with a fixed interest rate. The Owner Financing Agreement explicitly stated that "[i]f both parties agree to the above, a signature will make this agreement binding and legal." However, only Brown signed the Amendment and the Owner Financing Agreement; Appellants did not. Thus, even if these documents could be construed as a contract for deed, *cf. Morton*, 412 S.W.3d at 509–10; *Flores*, 185 S.W.3d at 429, the clear and unambiguous language required signatures from "both parties" to make the agreement binding.

obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment." *Id.* § 16.035(e). Section 16.035 defines "real property lien" as "a superior title retained by a vendor in a deed of conveyance or a purchase money note" or "a vendor's lien, a mortgage, a deed of trust, a voluntary mechanic's lien, or a voluntary materialman's lien on real estate, securing a note or other written obligation." *Id.* § 16.035(g). "Section 16.035 modifies the general rule that a claim accrues and limitations begins to run on each installment when it becomes due." *CA Partners v. Spears*, 274 S.W.3d 51, 65 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)).

Here, Section 16.035(e) is inapplicable. The summary judgment evidence shows that there was no deed of conveyance, mortgage, promissory note, or deed of trust. Rather, Appellants failed to provide credit information or signed loan documents as required by the Purchase Agreement, and Brown refused to approve Appellants for a seller-financed loan. Thus, there was no real property lien.[3]

---

[3]To the extent that Appellants rely on Arreola's affidavit to raise a fact issue as to the existence of a loan, Arreola's own statements in an affidavit regarding her belief and understanding of the real estate transaction are self-serving and conclusory, as they are unsupported by independent facts, and thus do not raise a fact issue to defeat summary judgment. *See Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *Long v. Sw. Funding, L.P.*, No. 03-15-00020-CV, 2017 WL 672445, at *7 (Tex. App.—Austin Feb. 16, 2017, no pet.).

Because it is inapplicable to Appellants' claims, Section 16.035(e) did not toll the statute of limitations. *See Holy Cross Church of God in Christ*, 44 S.W.3d at 565–67 (analyzing Section 16.035(e) in the context of notes secured by deeds of trust); *CA Partners*, 274 S.W.3d at 65, 66 (similar); *Est. of Montague v. Nat'l Loan Invs., L.P.*, 70 S.W.3d 242, 249 (Tex. App.—San Antonio 2001, pet. denied) (stating that resolution of limitations defense under Section 16.035 hinges on whether note was secured by real property lien); *see also Moreno*, 2026 WL 516451, at *14 (holding that Section 16.035(e) is "a limitations statute for actions by *holders* of liens on real property" and that it was thus inapplicable to the buyer's claims); *cf. Discovery Grp., Inc. v. Kammen*, No. 01-15-00243-CV, 2015 WL 7300690, at *3 (Tex. App.—Houston [1st Dist.] Nov. 19, 2015, pet. denied) (holding that an agreement to lease an apartment is a contract subject to the four-year statute of limitations under Section 16.004). Accordingly, the trial court did not err by not applying the limitations period under Section 16.035(e). We overrule Appellants' first issue.

## C. Fraud Claim

In their second issue, Appellants argue that "proving accrual for the statute of limitations on discovery of fraud is incredibly questionable in this case" and that Appellees "failed to conclusively establish the absence of fraud." According to Appellants, Brown either entered into the Purchase Agreement "without the intention to perform" or "continued to affirm" the Purchase Agreement "by accepting loan payments even after he decided that the [Purchase Agreement] was not really a loan

for the house." Appellants contend that, based on Brown's continuing fraudulent actions—accepting "loan" payments and then selling the property to the Jensens—and the fact that Appellants' "English skills were not strong," they did not discover Brown's fraud until they made their last payment and Brown sold the property to the Jensens in December 2021.

The supreme court has recognized two general exceptions to the statute of limitations for fraud claims: the discovery rule and fraudulent concealment. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927, 929–30 (Tex. 2011); *In re Est. of Ewers*, 695 S.W.3d 603, 620 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (op. on reh'g). The discovery rule is a rule of accrual that may apply to extend the limitations period in "very limited" cases. *Shell Oil Co.*, 356 S.W.3d at 929–30; *Ewers*, 695 S.W.3d at 620. The discovery rule defers accrual of a cause of action until the plaintiff knew or reasonably should have known of the facts giving rise to the cause of action. *Shell Oil Co.*, 356 S.W.3d at 929–30; *Ewers*, 695 S.W.3d at 620. But the rule applies only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable. *Shell Oil Co.*, 356 S.W.3d at 930; *Ewers*, 695 S.W.3d at 620. An injury is inherently undiscoverable if it is unlikely to be discovered within limitations despite due diligence. *Shell Oil Co.*, 356 S.W.3d at 930; *Ewers*, 695 S.W.3d at 620. This presents a question of law to be decided on a categorical basis rather than on the particular facts of a given case. *Shell Oil Co.*, 356 S.W.3d at 930; *Ewers*, 695 S.W.3d at 620.

Fraudulent concealment is a tolling doctrine. *Shell Oil Co.*, 356 S.W.3d at 927. Rather than deferring accrual, the doctrine of fraudulent concealment may toll the statute of limitations after a cause of action has accrued if the defendant conceals his wrongdoing. *Ewers*, 695 S.W.3d at 620. It resembles equitable estoppel by preventing a defendant from relying on the statute of limitations when the plaintiff's delay in bringing a cause of action is due to the defendant's own fraud. *Id.* at 621; *see Valdez v. Hollenbeck*, 465 S.W.3d 217, 230 (Tex. 2015) ("[A] party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations.").

Fraudulent concealment is a fact-specific equitable doctrine that tolls the limitations period until the fraud is discovered or could have been discovered with reasonable diligence. *Shell Oil Co.*, 356 S.W.3d at 927; *Ewers*, 695 S.W.3d at 621. Like the discovery rule, evidence of reasonable diligence is evaluated under an objective—not subjective—standard of reasonableness. *Ewers*, 695 S.W.3d at 623. Reasonable diligence requires a party to protect his or her own rights in dealings with others, including making inquiries needed to safeguard those rights. *Id.* For example, reasonable diligence requires a party to make himself or herself aware of relevant information readily accessible and available in the public record, such as deed information. *Shell Oil Co.*, 356 S.W.3d at 928; *see BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 68 (Tex. 2011) ("[R]eliance is not reasonable when information revealing the truth could have been discovered within the limitations period.").

"[T]he two exceptions exist for different reasons and often operate in different ways." *Ewers*, 695 S.W.3d at 620. While the discovery rule delays commencement of the limitations period, fraudulent concealment tolls the running of the limitations period once it has already begun. *Id.* The distinction is important because a defendant moving for summary judgment based on the statute of limitations must negate the discovery rule because it determines when the plaintiff's claim accrued, but fraudulent concealment is an affirmative defense to the statute of limitations on which the plaintiff must present evidence to avoid summary judgment. *Id.* at 621 (citing *Weaver v. Witt*, 561 S.W.2d 792, 793–94 (Tex. 1977)).

Here, Appellants appear to "conflat[e] the two exceptions" to the statute of limitations "by erroneously suggesting fraudulent concealment is a doctrine that defers accrual." *Id.* Indeed, while Appellants refer to the "accrual" of their fraud cause of action to overcome the statute of limitations, their arguments in the trial court and in this court are consistent with the doctrine of fraudulent concealment. Specifically, Appellants' arguments are both fact-specific and based in equity. According to Appellants, Brown concealed his fraud by accepting and referring to their payments as "loan" payments, and it would be inequitable to allow Brown to rely on the statute of limitations to defeat Appellants' fraud claim when it was Brown's actions that prevented Appellants from discovering his fraud.

To defeat the statute of limitations based on Brown's alleged fraudulent concealment, Appellants had to prove that Brown actually knew a wrong occurred,

22

had a fixed purpose to conceal the wrong, and did conceal the wrong. *Id.* (citing *Shell Oil Co.*, 356 S.W.3d at 927). Because Appellants alleged that Brown fraudulently concealed his wrong through affirmative misrepresentations—accepting and allegedly referring to their payments as "loan" payments—they also had to prove that they relied on Brown's misrepresentations and that their reliance was reasonable under the circumstances. *Id.* Based on the summary judgment record, Appellants did not meet their burden of proof.

As discussed above, the summary judgment evidence shows that the Purchase Agreement was a contract for sale. To obtain a seller-financed loan from Brown for the purchase of the property, Appellants were required to provide credit information and execute a promissory note secured by a deed of trust. Brown was required to execute and deliver a general warranty deed conveying title to the property to Appellants. The parties were required to fulfill their respective obligations by the closing date: April 1, 2015. Neither party fulfilled their obligations; the summary judgment evidence contains no credit information, no promissory note, no deed of trust, and no warranty deed, and it does not otherwise contain any evidence of seller financing or a transfer of title to Appellants by the closing date.

When Appellants failed to fulfill their obligations by April 1, 2015, the Purchase Agreement permitted Brown to either (1) enforce specific performance, seek legal relief, or both or (2) terminate the Purchase Agreement, "thereby releasing both parties from" the Purchase Agreement. The summary judgment evidence shows that

23

Brown did not enforce specific performance or seek legal relief under the Purchase Agreement.

The summary judgment evidence conclusively shows that even if Brown had entered into the Purchase Agreement without the intention to perform and referred to Appellants' payments as "loan" payments, Appellants should have discovered or could have discovered through the exercise of reasonable diligence Brown's wrongdoing before limitations expired. Appellants were required to protect their own rights in their dealings with Brown, including making the necessary inquiries to safeguard those rights and making themselves aware of readily accessible public information. *See Shell Oil Co.*, 356 S.W.3d at 928; *Ewers*, 695 S.W.3d at 623. Had they done so, Appellants would have discovered Brown's intention not to perform when, notwithstanding Appellants' failure to secure seller or third-party financing, he failed to execute and deliver a warranty deed by April 1, 2015—the date of accrual. Under an objective standard of reasonableness, Appellants failed to exercise the requisite diligence to toll the running of the limitations period. *See Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 464 (Tex. 2023) (concluding that, even if fraudulent concealment applied, at the time lessee breached gas-station lease with plaintiff, plaintiff "learned of facts that, if pursued, would have led to the discovery of [transaction broker's] alleged misrepresentations" and reinstating trial court's summary judgment in favor of broker); *Kerlin v. Sauceda*, 263 S.W.3d 920, 926 (Tex. 2008) (holding that certain title records, such as warranty

24

deeds, were publicly available and could have been discovered through reasonable diligence); *Christerson v. Speer*, No. 01-16-00469-CV, 2017 WL 1520449, at *5, *7 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, pet. denied) (upholding summary judgment and concluding that limitations period of home buyers' fraud claim was not tolled because closing documents placed buyers on notice of terms of seller financing and that, as a matter of law, buyers knew or should have known at closing of any discrepancy between terms set forth in closing documents and terms as they understood them); *see also Espinoza v. Dir., TDCJ-CID*, No. 3:24-CV-2245-X-BK, 2025 WL 746550, at *4 (N.D. Tex. Feb. 3, 2025) (concluding that appellant's "lack of English proficiency [wa]s not enough to toll the limitations period" when appellant did not exercise the requisite diligence), *rep. and rec. adopted*, 2025 WL 746522 (Mar. 6, 2025).

Because the information revealing the truth—the clear and unambiguous language of the Purchase Agreement and the lack of any financing or a warranty deed in Appellants' names—could have been discovered within the limitations period, Appellants' reliance on Brown's representing to them from May 2015 to December 2021 that their payments were for a "loan" was not reasonable. *See BP Am. Prod. Co.*, 342 S.W.3d at 68; *see, e.g., Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 501 (Tex. 2019) (holding that as a matter of law, plaintiff could not justifiably rely on defendant's oral representations when they were directly contradicted by express, unambiguous terms of contract); *see also Salinas v. Beaudrie*,

960 S.W.2d 314, 320 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.) (rejecting land purchasers' argument that they were misled by seller and relied on seller's promise to their detriment when they signed contracts they had not read because of their "language difficulties" and holding that purchasers' lack of fluency in English did not relieve them from their duty to read the contracts they signed).

Accordingly, the doctrine of fraudulent concealment did not toll the limitations period, and the statute of limitations bars Appellants' fraud claim. We overrule their second issue.

## D. Chapter 5, Subchapter D of the Property Code

In their third issue, Appellants argue—in direct conflict with the arguments raised in their first issue—that the trial court erred by failing to apply Property Code Chapter 5, Subchapter D's consumer protections on executory contracts and improperly concluding that Appellants had waived their right to demand a deed at any time. According to Appellants, they were "entitled to demand a deed at the time suit was filed," and "[t]here is no limitations bar to suing to receive a deed." Once again, Appellants fail to provide any record citations for this issue. *See* Tex. R. App. P. 38.1(i).

Chapter 5, Subchapter D governs "executory contracts for the conveyance of real property," including contracts for deed. *Morton*, 412 S.W.3d at 507. It does not apply to a conventional contract for sale in which the seller and purchaser mutually agreed to complete payment and title transfer on a certain date. *Shook*, 368 S.W.3d at

625; *see* Tex. Prop. Code § 5.062 (providing that Chapter 5, Subchapter D applies "only to a transaction involving an executory contract for conveyance of real property"); *White*, 2018 WL 525684, at *6. Here, then, because the Purchase Agreement was not an executory contract but was a conventional contract for the sale of realty, Chapter 5, Subchapter D does not apply, and the trial court did not err by concluding as much when it granted summary judgment. Accordingly, we overrule Appellants' third issue.

**E. Right to Lease the Property**

In their fourth issue, Appellants ask this court to "disregard [Brown]'s claims for breach of a rental covenant." Appellants argue that under the Purchase Agreement, they "were entitled to rent[ ]out their home for up to three years." The few short paragraphs in Appellants' brief dedicated to this issue contain no record citations and provide only a reference to Section 5.066 of the Property Code as supporting authority. *See* Tex. R. App. P. 38.1(i). Appellants have therefore waived this issue due to inadequate briefing. *See* Tex. R. App. P. 38.9 (providing that an inadequately briefed issue may not preserve error on appeal); *NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437, 446–47 (Tex. App.—Fort Worth 2023, pets. denied) (holding that "wholly inadequate" briefing does not present an adequate appellate issue).

Even if Appellants had presented an adequate appellate issue, as discussed above, Section 5.066 is inapplicable because the Purchase Agreement was not an

executory contract. *See* Tex. Prop. Code § 5.062; *Shook*, 368 S.W.3d at 625. Further, from what we can glean from Appellants' argument, they appear to raise this issue in response to Brown's counterclaims against Appellants. But those counterclaims are not part of this appeal; the trial court severed Brown's counterclaims against Appellants from this action. Accordingly, we overrule Appellants' fourth issue.

## F. The Jensens' Cross-Appeal

In a single issue in their cross-appeal, the Jensens argue that "the trial court's summary dismissal of the Jensens' conditional counterclaim with prejudice [was] harmful error." Appellants did not file a cross-appellees' brief or otherwise respond to the Jensens' cross-appeal.

In their counterclaim against Appellants, the Jensens sought, in the event that the trial court "t[ook] title" of the property from the Jensens, an equitable lien on the property "to restore [themselves] to the status quo ante, avoid causing undue harm to [them], and prevent unjustly enriching [Appellants]." Specifically, the Jensens asked the trial court "to impose an equitable lien on the home to secure payment of the purchase price and the value of any improvements on the home, plus all property taxes, insurance, management costs, and other maintenance paid by the Jensens." The Jensens also asked the trial court to order that they could foreclose on the lien by writ of execution if Appellants failed to pay the amount awarded within thirty days of the final judgment.

28

The Jensens' counterclaim was not expressly addressed in any summary judgment motion, response, or reply. In the trial court's final judgment, it severed from the case (1) the claims that Appellants raised for the first time in their third amended petition, (2) Brown's counterclaims against Appellants, and (3) the Jensens' cross-claim against Brown. It then "dismissed in their entirety" all the "claims, counterclaims, or cross-claims asserted by any party against any other party in the action that are not comprised in the [s]evered [c]laims" and ordered that "the party asserting such claim, counterclaim, or cross-claim shall take nothing." The trial court ordered that its final judgment "is final, disposes of all claims and all parties, and is appealable. All relief not granted herein is denied." Because the Jensens' counterclaim against Appellants was not severed from the case, it was dismissed with prejudice in the trial court's final judgment.

On appeal, the Jensens assert that their counterclaim was conditioned on a judgment awarding title of the property to Appellants and that because the final judgment granted Appellees summary judgment on all of Appellants' claims—thereby identifying the Jensens as the proper owners of the property—the Jensens' counterclaim was never adjudicated. The Jensens argue that because their counterclaim was never adjudicated, the trial court erred by dismissing it with prejudice. They request that we modify the trial court's final judgment to reflect that their counterclaim is dismissed without prejudice and affirm the judgment as modified.

29

A final judgment is considered erroneous if the record does not provide an adequate basis for rendition of judgment. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). A judgment that grants more relief than a party is entitled to is erroneous and subject to reversal—but "only those portions of the judgment based on harmful error." *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011); *see Lehmann*, 39 S.W.3d at 200. A trial court cannot grant summary judgment on grounds not presented in the motion. *See G & H Towing*, 347 S.W.3d at 297; *see also State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (stating that a "[s]ummary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion"). "Granting a summary judgment on a claim not addressed in the summary judgment motion therefore is, as a general rule, reversible error." *G & H Towing*, 347 S.W.3d at 297.

A dismissal with prejudice is an adjudication of the parties' rights; a dismissal without prejudice is not. *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 461 S.W.3d 627, 630 (Tex. App.—Fort Worth 2015, pet. denied); *see Garrett v. Williams*, 250 S.W.3d 154, 160 (Tex. App.—Fort Worth 2008, no pet.) ("A dismissal with prejudice constitutes an adjudication on the merits and operates as if the case had been fully tried and decided."). Thus, a dismissal with prejudice operates as res judicata to bar the dismissed claims, but a dismissal without prejudice allows the claimant to refile the same claims in a new cause. *CTL/Thompson Tex., LLC*, 461 S.W.3d at 630; *see Garrett*, 250 S.W.3d at 160 ("[O]rders dismissing cases with

prejudice have full res judicata and collateral estoppel effect, barring subsequent relitigation of the same causes of action . . . .").

Here, although the record indicates that the Jensens' counterclaim was never adjudicated, the trial court's dismissal of the counterclaim with prejudice constitutes an adjudication on the merits and operates as res judicata to bar the counterclaim from subsequent relitigation. Further, the trial court granted summary judgment on a counterclaim not addressed in the summary judgment motions, thereby providing Appellants more relief than they were entitled. The trial court's final judgment is therefore erroneous and subject to reversal. The Jensens, however, do not ask that we reverse and remand the summary judgment but instead ask that we modify it to reflect that their counterclaim is dismissed without prejudice. Appellants and Brown have not challenged or otherwise opposed the Jensens' requested relief.

We agree with the Jensens that the trial court erred by effectively dismissing their counterclaim with prejudice. Accordingly, we sustain the Jensens' cross-appeal, and we modify the trial court's judgment by adding to it that the Jensens' counterclaim against Appellants is dismissed without prejudice. *See* Tex. R. App. P. 43.2(b); *Moers v. Harris Cnty. Appraisal Dist.*, 469 S.W.3d 655, 668 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (concluding that trial court erred by dismissing claims with prejudice and modifying judgment to reflect that claims were dismissed without prejudice).

## IV. Conclusion

Having overruled all of Appellants' issues and sustained the Jensens' cross-appeal, we modify the trial court's judgment to reflect that the Jensens' counterclaim against Appellants is dismissed without prejudice, and we affirm the judgment as modified.

Wade Birdwell
Justice

Delivered: June 11, 2026